IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEE T., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, | : | No. 23-cv-302 |
| Commissioner of Social Security. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                                      **July 24, 2024**
**United States Magistrate Judge**

Christopher Lee T. (hereafter "Plaintiff") seeks review of the Commissioner's decision

denying his application for Disability Insurance Benefits (DIB).  The parties consented to

proceed before a Magistrate Judge[1] and the matter was assigned to me.[2]  For the following

reasons, I deny Plaintiff's request for review and affirm the Commissioner's decision.

I.      **PROCEDURAL HISTORY**

On May 11, 2020, Plaintiff filed an application for DIB under the Social Security Act,

alleging a disability onset date (AOD) of March 17, 2019.  R. 230.  The claim was denied

initially on September 18, 2020, and again on reconsideration.  R. 85-86, 88-115.  Plaintiff

requested a hearing before an Administrative Law Judge (ALJ).  R. 139.  On January 5, 2020, a

hearing took place over the phone before ALJ Kathleen McDade because of the Covid-19

pandemic.  R. 50-53.  Plaintiff appeared with his counsel, Karen Quinn.  R. 52.  Vocational

Expert (VE) Robert Jackson testified at the hearing.  R. 22, 66-67.

---

[1] See Doc. 4; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] See Doc. 3.

The ALJ issued a decision denying benefits.  R. 19-44.  Plaintiff filed a request for review of the ALJ's decision, which was denied.  R. 1-4.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  R. 1-3; 20 C.F.R. § 404.981.  Plaintiff's counsel then filed this action in federal court.  Doc. 1.  Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  Doc. 17.  Defendant filed a Response to Plaintiff's Request for Review.  Doc. 25.  Plaintiff subsequently filed a reply.  Doc. 28.

## II.   **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.   Whether the claimant is currently engaged in substantial gainful activity;

2.   If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.   If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.   If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity (RFC) to perform their past work; and

5.   If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4).  Plaintiff

bears the burden of proof at steps one through four, while the burden shifts to the Commissioner

at step five to establish that the claimant can perform other jobs in the local and national

economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of

Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

 The court's role on judicial review is to determine whether the Commissioner's decision

is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc.

Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a

mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777

F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek

v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion'")

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).

It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing

Schaudeck, 181 F.3d at 431).

## III. ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

 The ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain

insured through December 31, 2024.  R. 25.  The ALJ found that Plaintiff had not engaged in any

substantial gainful employment since the AOD.  Id.

 The ALJ noted Plaintiff had one severe impairment, rheumatoid arthritis (RA), and

several nonsevere impairments including borderline obesity, coronary artery disease, substance

use in disorder in remission, and mental impairment disorders.  R. 25-26; 20 C.F.R. § 404.1520(c).  The ALJ decided that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the Listings.[3]  R. 29; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Considering the entire record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  R. 30, 67-68.  Plaintiff could frequently handle, finger, and feel bilaterally as well as frequently operate foot controls bilaterally.  Id. Plaintiff can occasionally be exposed to extreme cold; but cannot be exposed to hazards, such as unprotected heights and unprotected moving mechanical parts.  Id.  The ALJ found Plaintiff could perform his past relevant work as a service advisor[4] because the work comported with the light work limitations incorporated into Plaintiff's RFC.  R. 42.  Plaintiff, however, could not perform his past relevant work as an auto mechanic[5] because the work exceeded the RFC's light work restriction.  Id.; see 20 C.F.R. § 404.1565.  The ALJ additionally found that there were other jobs in the national market that Plaintiff could perform, including counter rental clerk[6] and ticket taker.[7]  R. 43.  Therefore, the ALJ found that Plaintiff was not disabled.  R. 43-44.

---

[3] The ALJ specifically discussed Listing 14.09 (Inflammatory Arthritis) when finding Plaintiff's rheumatoid arthritis severe.  See R. 29.
[4] Service advisor is a skilled, light exertion level position.  See Dictionary of Occupational Titles (DOT) (4th ed. rev. 1991) 620.261-018; R. 42; 68.
[5] An auto mechanic is a skilled, medium exertion level position.  See DOT 620.261-010; R. 42; 67.
[6] See DOT 295.357-018.
[7] See DOT 344.667-014

In his request for review, Plaintiff argues the ALJ did not properly evaluate the medical opinions of Dr. David Dzurinko, Dr. Kevin Scott Hollick, Dr. Ethel Hooper, Dr. Patrick Frisella, and Dr. Enid Y. Sun when evaluating the impact RA has on Plaintiff's ability to use his hands. Doc. 8, at 3-25.  Plaintiff also asserts that the ALJ erred in finding the VE's testimony regarding his ability to perform past relevant work consistent with the DOT because one of Plaintiff's previous jobs required occasional exposure to moving parts which Plaintiff's RFC prohibited. Id. at 4.  Lastly, Plaintiff contends the ALJ erred when declining to keep the record open for post-hearing evidence regarding Plaintiff's cardiac issue and failed to properly evaluate the cardiac issue evidence.  Id.  The Commissioner counters that substantial evidence supports the ALJ's RFC assessment, the step five finding, and the finding regarding Plaintiff's cardiac records.  Doc. 25.  The Commissioner also asserts that the ALJ was not required to hold the record open indefinitely.  Doc. 25, at 16.

## IV.   FACTUAL BACKGROUND

Plaintiff was a "person closely approaching advanced age" when he filed his application for DIB.  R. 42; 230; 20 C.F.R. § 404.1563(d).  Plaintiff has a high school education and underwent automotive vocational training.  R. 56.  Plaintiff's prior work includes auto mechanic and service advisor.  R. 42; 67.

### A.  Medical evidence[8]

#### 1.  Dr. David Dzurinko

---

[8] Here, I outline only the relevant medical opinions related to the issues raised on appeal, along with some additional medical information as background.

Dr. Dzurinko conducted an internal medicine examination of Plaintiff on August 17, 2020.  R. 445.  Dr. Dzurinko noted that Plaintiff was diagnosed with RA approximately seven to eight years before the exam.  Id.  Plaintiff's RA was managed with medication which alleviated his symptoms.  Id.  Without medication, Plaintiff experienced significant swelling of his hands that could be relieved with hot water.  R. 446.  Plaintiff reported suffering discomfort "6-8/10 daily."  Id.  Plaintiff reported being able to perform daily living activities in the home and drive himself around.  Id.  He reported needing assistance with cleaning and dressing.  R. 447.  Dr. Dzurinko did not find evidence of joint deformity, and opined Plaintiff's joints were stable.  R. 448.  Dr. Dzurinko noted, "The hand joints, PIP, MCP, and DIP are tender, and he has weakness in the hands. He has difficulty making a full fist. Hands are swollen. There is mild erythema in the hand."  Id.  Plaintiff exhibited sensory deficit in the lower extremities but no loss of strength. Id.  Plaintiff struggled with shoelaces and clothing, however, was able to zip, button, and tie on the office model.  R. 449.  Dr. Dzurinko noted mild dexterity impairment.  Id.

Dr. Dzurinko completed a Medical Source Statement of Ability to do Work-Related Activities (MSS) and found that Plaintiff could occasionally lift/carry up to twenty pounds but could never lift/carry over twenty-one pounds.  R. 450.  Plaintiff could sit for eight hours without interruption.  R. 451.  Plaintiff could occasionally reach overhead, handle, finger, feel, and push/pull with both hands.  R. 452.  Plaintiff could frequently reach generally with both hands. Id.  He could also occasionally operate foot controls with both feet.  Id.  Dr. Dzurinko noted that Plaintiff could occasionally climb stairs and ramps, balance, and crawl, frequently stoop, kneel, and crouch, but could never climb ladders or scaffolds.  R. 453.  Plaintiff could frequently be exposed to humidity, wetness, dust odors, fumes, and pulmonary irritants.  R. 454.  He could

occasionally be exposed to moving mechanical parts and operate a motor vehicle but could never be exposed to unprotected heights.  Id.

### 2.  Dr. Enid Y. Sun

Dr. Enid Y. Sun was Plaintiff's treating rheumatologist.  Doc. 17, at 20.  Dr. Sun completed a physical residual functional capacity assessment on September 14, 2021.  R. 567. Dr. Sun opined that Plaintiff could only occasionally lift/carry less than ten pounds, and frequently lift/carry less than ten pounds.  R. 561.  Plaintiff could stand and/or sit less than two hours in an eight-hour workday.  Id.  He could sit, with normal breaks, but must periodically alternate between sitting and standing to relieve pain and discomfort.  Id.  He was limited in pushing and pulling with both upper and lower extremities.  Id.  Dr. Sun explained that Plaintiff had active RA and high disease activity.  Id.  He was unable to bend and straighten his elbows, hands, knees, and feet or bear weight on these joints without significant pain due to inflammation.  Id.  He also could not close his hands at the time of the examination.  Id.  Dr. Sun further found that Plaintiff could never climb ladders, ropes or scaffolds, kneel, crouch, or crawl. R. 562.  He could occasionally balance and stoop.  Id.  He was limited in his ability to grip objects and couldn't comfortably place/bear weight on his joints.  Id.  Plaintiff was also limited in reaching, handling, and fingering but not limited in feeling.  R. 563.  Plaintiff could never be exposed to extreme cold or hazards (machinery, heights, etc.).  R. 564.  He should avoid moderate exposure to fumes, odors, dust, gasses, and poor ventilation.  Id.  He was unlimited in exposure to wetness, humidity, and noise.  Id.  Dr. Sun noted that Plaintiff's fingers react to extreme cold, possibly resulting in skin ulcers.  Id.  He also cited to Plaintiff's decrease in mobility as a reason he could not be exposed to hazards.  Id.

Dr. Sun noted that Plaintiff's disability was due to untreated RA.  R. 565.  He stated that with treatment Plaintiff may be able to gain function of his extremities, although at the time of the exam he was unable to assess Plaintiff's potential level of baseline function or know when the disease may enter remission.  Id.

### 3.  Dr. Patrick Frisella

Dr. Frisella conducted an internal medicine examination on Plaintiff on March 5, 2021. R. 528.  Dr. Frisella noted that Plaintiff reported having approximately three to four RA flares a year and daily pain of 7-8/10 while using his hands.  Id.  Plaintiff reported that his RA is better with medication, but he has not consistently taken medication.  Id.  Plaintiff needs assistance with daily living activities from his wife.  R. 529.  He can drive, clean two to three times a week, and shower by himself.  Id.  Bilaterally his hands demonstrated mild ulnar deviation.  R. 530. His joints were stable non tender, no swelling of the extremities, no sensory defect in the upper and lower extremities, 5/5 strength in upper and lower extremities, hand and finger dexterity was intact.  Id.  Plaintiff demonstrated mild difficulty with zip, button, and tie maneuvers.  Id.

Dr. Frisella completed a MSS after Plaintiff's examination.  R. 532-44.  Dr. Frisella found that Plaintiff could frequently lift/carry up to ten pounds, occasionally lift/carry up to twenty pounds, and never lift/carry over twenty-one pounds.  R. 532.  He cited Plaintiff's history of RA as a reason for his findings.  Id.  Plaintiff could sit, stand, and walk for eight hours during an eight-hour workday without interruption.  R. 533.  Plaintiff could occasionally reach overhead with both hands, frequently reach generally and push/pull with both hands.  R. 534.  He could continually handle, finger, and feel with both hands.  Id.  Plaintiff could continuously operate foot controls.  R. 534.  Plaintiff could continuously climb stairs and ramps, balance, stoop, kneel,

crouch, and crawl.  R. 535.  He, however, could only occasionally climb ladders or scaffolds.  Id.

Dr. Frisella placed no environmental restrictions on Plaintiff.  R. 536.  Plaintiff could travel

unassisted, ambulate unassisted at a reasonable pace, take public transportation, prepare simple

meals and feed himself, manage his personal hygiene, and sort handle, or use paper/files.  R. 537.

### 4. Dr. Kevin Scott Hollick

Dr. Hollick was Plaintiff's consultative examiner at the initial determination level.  R. 72-

83.  Dr. Hollick's examination took place on September 16, 2020.  R. 83.  Dr. Hollick found that

Plaintiff could occasionally lift/carry up to twenty pounds.  R. 79.  He could frequently lift/carry

up to ten pounds.  R. 80.  He could stand, walk, and sit for six hours out of an eight-hour

workday.  Id.  Plaintiff was unlimited in push/pull abilities except with the limitations noted for

lifting/carrying.  Id.  Dr. Hollick noted that Plaintiff was unlimited in his ability to climb

ramps/stairs, stoop, kneel, crouch, and crawl.  R. 80.  He could occasionally balance but could

never climb ladders/ropes/scaffolds due to safety concerns.  Id.  Plaintiff was unlimited in

reaching in all directions and feeling but limited in both hands when handling and fingering.  R.

80.  Plaintiff could have unlimited exposure to extreme heat, wetness, humidity, noise, fumes,

odors, dusts, gases, poor ventilation.  R. 81.  Plaintiff could only be moderately exposed to

extreme cold and should avoid concentrated exposure to vibrations and hazards.  Id.

Dr. Hollick based his findings on Plaintiff's past medical history and current medical

examinations.  R. 81-83.  He noted that Plaintiff previously experienced pain and swelling in

both hands when his RA was unmedicated.  Id.  Plaintiff was able to treat his RA with over-the-

counter medication.  Id.  He provided that Plaintiff experienced stiffness in both hands during a

flare up for fifteen to twenty minutes at a time.  Id.  Medical records demonstrated similar but

less intense symptoms in his feet.  Id.   He found that Plaintiff did not need assistive devices, but did need help changing, and was able to rise from a chair without difficulty.  Id.  He noted that Plaintiff had difficulty making a fist and had some tenderness in his joints.  Id.  Plaintiff struggled to tie shoelaces and dress himself, but was able to zip, button, and tie on the office model.  Id.  He had mild dexterity impairment and grip strength of 60% on the right and 80% on the left.  Id.  Dr. Hollick agreed with Dr. Dzurinko's opinion that Plaintiff could lift/carry up to twenty pounds occasionally, sit for eight hours, walk for six hours, and occasionally use his hands bilaterally.  Id.  Dr. Hollick also reviewed Plaintiff's November 8, 2019 x-ray films.  Id. Dr. Hollick noted inflammatory arthritis present.  Id.  Plaintiff's left hand was stable with marginal erosion in the radial base of the 3rd proximal phalanx, mild degenerative changes in the 1st interphalangeal joint and in the 2nd and 3rd distal interphalangeal joints.  Id.  His right hand showed new small marginal erosion in the radial base of the 5th proximal phalanx and redemonstrated mild chondrocalcinosis in the triangular fibrocartilage complex.  Id.

### 5.  Dr. Ethel Hooper

Dr. Hooper examined Plaintiff for his DIB reconsideration determination.  R. 101.  Dr. Hooper opined that Plaintiff could occasionally lift/carry up to twenty pounds and could frequently lift/carry up to ten pounds.  R. 102.  Plaintiff could stand/walk/sit for six hours of an eight-hour workday.  Id.  Plaintiff was not limited in pushing/pulling except for the lift/carry exceptions.  Id.  She found that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  R. 102-103.  Plaintiff, however, could never climb ladders/ropes/scaffolds.  Id.  Plaintiff was unlimited in reaching and feeling but limited in handling and fingering in both hands.  R. 103-104.  Plaintiff may have unlimited exposure to

extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation.  R. 104-105.  Plaintiff should avoid concentrated exposure to extreme cold, vibrations, and hazards.  Id.  Dr. Hooper explained that Plaintiff was diagnosed with RA in 2017, x-rays demonstrated inflammatory arthritis in his hands (described as episodic symptoms) and cited many of the same reasons as Dr. Hollick.  R. 102-105.  Dr. Hooper noted that Plaintiff could drive and go out alone, but had trouble dressing, buttoning, and zippering.  Id.  She noted that Plaintiff's RA affects his grip strength and causes tenderness in his hands, but otherwise his joints appear normal.  R. 106.  Dr. Hooper reviewed Dr. Dzurink and Dr. Frisella's opinions.[9]  R. 106-107.  Dr. Hooper found Dr. Frisella's opinion partially consistent, stating that the reaching is overestimated, and handling and fingering are underestimated.  Id.

### B.  Other Medical Evidence

Plaintiff underwent coronary bypass surgery in December of 2021 shortly before his hearing.  R. 10.  Plaintiff was given a stress test before his surgery which revealed "[a] small to medium sized, moderate intensity reversible perfusion defect at the mid-distal anteroseptal wall, consistent with myocardial ischemia. No significant fixed defect. Normal LV wall motion and wall thickening. . . . Normal LVEF equal to 61% poststress."  R. 49.   Plaintiff submitted an operative report stating that the operation was completed without difficulty, post operative TEE[10] was good, left and right ventricular function were good.  R. 572.  His surgery was non-elective and left him with chronic dyspnea, right thigh pain, and lower leg numbness.  R. 10, 361.  Post cardiac surgery, months after his hearing, Dr. Sun noted severe burning pain with touch on the

---

[9] Dr. Hooper did not address Dr. Dzurink's opinion.
[10] Transesophageal Echocardiogram

outside/front of Plaintiff's right leg.  R. 12.  He also noted that Plaintiff's hand swelling had

worsened post-operation without medication noting constant swelling and stiffness, with

cracking of the skin.  Id.  Dr. Sun also noted Plaintiff's flare ups lasted all day and he had

difficulty grasping objects and completing fine motor tasks, resulting in a reduced ability to

work.  R. 13.

### C.  Non-Medical Evidence

Plaintiff lives in a home with his wife and two daughters, ages twenty and fifteen.  R. 55.

Plaintiff was laid off from his auto mechanic job in 2019.  R. 56-57.  He stated that at the end of

his employment he was unable to perform his job because of the pain in his hands and feet.  R.

56-57.  He stated that the RA causes his hands to swell up like boxing gloves and his skin can

split open requiring patching.  R. 59.  In his opinion, the pain in his hands and feet worsened

over time and the more he overexerts himself.  Id.  Plaintiff claims that his only skill is

automotive work and due to the labor required he is unable to work.  R. 57.  He testified that he

has experienced side effects from his cardiac procedure including muscle spasms and swelling in

his hands and feet.  R. 57-58.  He also experiences tingling of the joints, elbows, feet, and knees.

Id.  Occasionally, his upper thigh goes numb.  Id.

Plaintiff does very little day to day.  R. 59-60.  If he sits longer than ten to fifteen minutes

his legs go numb.  R. 60.  He cannot stand for more than ten to fifteen minutes.  Id.  He has

difficulty walking; he experiences shortness of breath and pins and needles after ten minutes of

walking.  R. 60-61.  He experiences difficulty going up and down the stairs due to his knee and

foot pain and shortness of breath.  R. 61.  He runs errands sometimes.  R. 62.  He testified that he

is able to drive short distances.  R. 55-56.  He spends most of his day in a recliner.  R. 62-63.  He

can shower and dress himself.  R. 63.  Plaintiff cannot button a shirt or tie his own shoes.  R. 63.

Plaintiff manages his RA with medication.  R. 64.  He stated that there was a period of time

where he stayed some of the week with his mother to assist her with his father who had cancer.

R. 65.  He stated that he mostly provided mental support, and someone would transport Plaintiff

from house to house.  Id.

## V.   DISCUSSION

### A.  The ALJ properly evaluated and considered the medical opinions addressing Plaintiff's ability to use his hands when determining Plaintiff's RFC, and the ALJ's RFC is supported by substantial evidence.

Plaintiff's first claim is that the ALJ did not properly evaluate the medical opinions

regarding the impact of Plaintiff's RA on his ability to use his hands, resulting in an unsupported

RFC.[11]  Doc. 17, at 3-25.  Plaintiff specifically lists the ALJ's evaluation of Dr. Dzurink, Dr.

Hollick, Dr. Hooper, Dr. Sun, and Dr. Frisella's opinions as inaccurate.  Id.  I find that his

argument lacks merit.

An RFC assessment is the most a claimant can do in a work setting despite the limitations

caused by his or her impairments.  20 C.F.R. § 404.1545(a)(1).  The RFC is based on all the

relevant and other evidence in the case record.  Id. § 404.1545(a)(3).  It is the ALJ's exclusive

responsibility to determine the claimant's RFC.  20 C.F.R. § 404.1546(c).  An ALJ must include

---

[11] Plaintiff additionally argues that the ALJ's persuasiveness conclusion for each medical opinion was incorrectly based on the ALJ's own medical opinion, and that the ALJ lacked adequate reasoning for accepting some limitations while refusing others.  Doc. 17 at 7-25.  This argument is rejected and addressed by the substantial evidence analysis set forth below.  See also Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.").

in the RFC any credibly established limitations the record supports.  <u>Salles v. Comm'r of Soc.</u>

<u>Sec.</u>, 229 F. App'x 140, 147 (3d Cir. 2007).

The ALJ's RFC assessment must be "'accompanied by a clear and satisfactory

explication of the basis on which it rests.'"  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 41 (3d Cir.

2001) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)).  Nevertheless, the ALJ is not

required to discuss or refer to every piece of the relevant evidence in the record when assessing

an RFC.  <u>Id.</u> at 42.  Once an ALJ has made an RFC determination it will not be set aside

provided substantial evidence supports the RFC.  <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir.

2002).

An "ALJ 'will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative finding(s), including those from [the

claimant's] medical sources.'"  <u>Thomas v. Kijakazi</u>, No. 21-cv-3547, 2022 WL 17880922, at *6

(E.D. Pa. Dec. 22, 2022) (quoting <u>Cheryl F. v. Kijakazi</u>, No. 20-cv-16052, 2022 WL 17155681,

at *10 (D. N.J. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)).  Instead, the ALJ must evaluate

the persuasiveness of the opinion based on five factors set forth in 20 C.F.R. § 404.1520c(c).

<u>See</u> <u>Thomas</u>, 2022 WL 17880922, at *6; <u>see also</u> <u>Lawrence v. Comm'r of Soc. Sec.</u>, No. 21-cv-

01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022) ("Rather than assigning weight to

medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.")

(alteration in original) (citations and internal quotations omitted).  The factors include: (1)

supportability; (2) consistency; (3) relationship with the claimant, including the length of the

treating relationship and the frequency of exams; (4) the medical source's specialization; and (5)

other factors including but not limited to the source's familiarity with the other evidence in a

claim or an understanding of the disability program's policy and evidentiary requirements.  20 C.F.R. § 404.1520c(c).  The most important factors when determining the persuasiveness of a medical opinion are supportability and consistency.  Id. § 404.1520c(a); Rose v. Kijakazi, No. 20-3222, 2022 WL 910093, at *5 (E.D. Pa. March 29, 2022).

Supportability means "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." Cota v. Kijakazi, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022); 20 C.F.R. § 404.1520c(c)(1).  As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole." Cota, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2).  Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  A key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim . . . .'" Gongon v. Kijakazi, 22-cv-384, 2023 WL 3919467, at *13 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ is only required to explain the supportability and consistency factors in the written opinion.  20 C.F.R. § 404.1520c(b)(2).  Even though the ALJ is not bound to accept any

physicians' conclusions, the ALJ "'may not reject them unless [he] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'"  Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (additional quotations and citations omitted)); see also Densberger v. Saul, No. 20-cv-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("[P]rovided that the decision is accompanied by an adequate, articulated reason, it is the province and duty of ALJ to choose which medical opinions and evidence deserve greater weight.").

When determining Plaintiff's RFC, the ALJ considered the opinions of two state agency consultants that examined Plaintiff (Dr. Dzurinko and Dr. Frisella), two non-examining state agency consultants (Dr. Hollick and Dr. Hooper), and Plaintiff's treating rheumatologist (Dr. Sun).  R. 33-34, 37-39.  The ALJ found Dr. Dzurink, Dr. Hollick, and Dr. Hooper's opinions partially persuasive.  R. 37-38.  Dr. Frisella's opinion was generally persuasive, while Dr. Sun's opinion was not persuasive.  R. 38-39.  The ALJ provided the following reasons:

**Dr. Dzurinko**

> On August 17, 2020, Dr. Dzurinko conducted an Internal Medicine Examination at the request of the agency. Dr. Dzurinko opined that the claimant can occasionally lift and/or carry up to 20 pounds…. The claimant can occasionally perform activities requiring overhead reaching, can frequently perform activities requiring reaching in all other directions; can occasionally perform activities requiring handling, fingering, feeling, pushing and pulling…. The claimant can tolerate occasional exposure to moving mechanical parts and occasional operation of a motor vehicle….
>
> Dr. Dzurinko's opinion is only partially persuasive because he understates some limitations and overstates others. The undersigned finds Dr. Dzurinko's opinion understates some environmental limitations. In consideration of hearing testimony, the undersigned

finds the overall record is consistent with no exposure to unprotected moving mechanical parts. Further, the record supports greater upper extremity functioning. Dzurinko diagnosed the claimant with a "flare" at the time of his exam, which gives partial support for his limitations at the time of his exam. However, the record also shows in 2019 the claimant reported episodic flares from 2017-2019, managed with over-the-counter medication, while at the same time he was engaging in light to medium exertional work. The record supports greater ability to function.

R. 37-38 (internal citations omitted).

### Dr. Hollick

On September 16, 2020, [Dr.] Hollick . . . opined that the claimant was able to perform a range of work at the light exertional range. Dr. Hollick opined that the claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry objects weighing up to 10 pounds…. He can occasionally handle and finger, bilaterally. Reaching and feeling were unlimited….

Dr. Hollick's opinion is partially persuasive. The light exertional level is supported and overall consistent with this record. However, the record supports greater ability to use the upper extremities for fine manipulation involving handling and fingering. The imaging studies and physical exam findings show no more than mild findings in the bilateral hands. The claimant's daily activities show greater ability to function and are adequately addressed in the residual functional capacity.

R. 37 (internal citations omitted).

### Dr. Hooper

On March 31, 2021, [Dr.] Hooper . . . reviewed the record at the request of the agency. Dr. Hooper opined that the claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry objects weighing up to 10 pounds . . . . He can occasionally handle and finger, bilaterally. Unlimited reaching and feeling . . . .

The undersigned finds Dr. Hooper's opinion is partially persuasive, for the same reasons discussed above, under Dr. Hollick's opinion.

Id. (internal citations omitted).

**Dr. Frisella**

On March 5, 2021, [Dr.] Frisella . . . conducted an Internal Medicine Examination at the request of the agency . . . . The claimant can occasionally use his hands, bilaterally, for reaching overhead, and can frequently reach in all other directions and frequently push/pull. The claimant has unlimited ability to use his hands to handle, finger, and feel. He can occasionally climb ladders or scaffolds and has no other postural limitations. Dr. Frisella attributed the limitations to history of rheumatoid arthritis.

Dr. Frisella's opinions are generally persuasive; however, she understates some postural and manipulative limitations. The undersigned finds the record supports frequent handling, fingering, and feeling, whereas Dr. Frisella found no limitation here. However, Dr. Frisella found for occasional overhead reaching; however, "occasional" limits is overly restrictive and inconsistent with mild findings, i.e., mild ulnar deviation, grip strength 80% full, mild difficulty with zip, button, and tie. Reaching limits are not supported, because there is no evidence of shoulder or neck involvement; rather, the mild findings do support handling, fingering, and feeling with no greater than frequent restrictions. Additional limits for frequent use of foot controls are warranted based on testimony and exam showing decreased sensation to vibration. Dr. Frisella did not have the opportunity to conduct a full and complete record review, however the essentially normal exam findings are consistent with the overall record and do support greater ability to function than alleged herein.

R. 38-39 (internal citations omitted).

**Dr. Sun**

On September 14, 2021, [Dr.] Sun . . . completed a Physical Residual Functional Capacity Assessment. Dr. Sun opined that the claimant can frequently lift/carry less than 10 pounds and can stand and/or walk less than two hours in an eight-hour workday. Dr. Sun did not provide an opinion as to the length of time the claimant can sit. The claimant "must periodically alternate sitting/standing to relieve pain/discomfort." Dr. Sun did not explain his reason for this limitation. For push/pull, Dr. Sun opined that the claimant is limited in upper and lower extremities. For nature and degree, Dr. Sun described: Patient with active rheumatoid arthritis and high disease

18

activity. Unable to bend/straighten elbows, hands, knees, or feet or bear weight on these joints without significant pain due to the inflammation present. Unable to close hands currently . . . . Dr. Sun identified the following specific fact upon which his conclusions are based: Due to inflammation(pain and swelling) in elbows, hands, knees, and feet patient is limited in ability to grip objects and cannot comfortably place/bear weight on these joints.

Dr. Sun opined that the claimant had no limitations in feeling. Dr. Sun opined that the claimant is limited in reaching in all directions (including overhead), handling, and fingering. Dr. Sun explained his conclusions as follows: Limited overhead movement with inflammation in shoulders due to inflammation in hands, cannot close hands/make a fist . . . .

Dr. Sun's opinion is not persuasive, because it is not supported by the record or consistent with the overall record. Dr. Sun did not include any progress notes in support of his opinions. He did not explain the respiratory limits. His opinion is unexplained and vague regarding "sitting." He fails to give time limits. He fails to define "unable" as stated. Inability to close hands is not supported by the mild findings or daily activities. There are no objective findings to support these limits. Opinion that "may be able to gain function of extremities" and "at this time unable to assess level of baseline function or know when disease remission may occur;" is vague and speculative at best.

R. 39 (internal citations omitted).[12]

Ultimately, the ALJ determined that Plaintiff had the RFC to perform light work with some restrictions—he could occasionally climb ramps and stairs, never climb ladders ropes, or scaffolds. R. 30. The ALJ also found that Plaintiff could frequently handle, finger, and feel bilaterally, as well as operate foot controls bilaterally. Id. Plaintiff could occasionally be

---

[12] Plaintiff concedes that Dr. Sun did not include any progress notes to support his opinion but asserts that the ALJ could have ask for Dr. Sun's progress notes. Doc. 17, at 21. It is Plaintiff's burden to prove disability. 20 C.F.R. § 404.1512(a); see also Reed v. Berryhill, 337 F. Supp. 3d 525, 528 (E.D. Pa. 2018) (stating medical source expressing conclusory statement about claimant's disability is not medical opinion evidence).

exposed to extreme cold, but no exposure to hazards such as unprotected heights and unprotected moving mechanical parts.  Id.

The ALJ sufficiently evaluated Dr. Dzurinko, Dr. Frisella, Dr. Hollick, Dr. Hooper, and Dr. Sun's opinions when she discussed supportability and consistency and explained the persuasiveness of each medical source at the end of each evaluation.  See 20 C.F.R. § 404.1520c(b); 20 C.F.R. § 404.1520c(c)(1), (2); Thomas, 2022 WL 17880922, at *6.  At the end of each evaluation, the ALJ cited to facts included in the medical records and various medical opinions, as well as Plaintiff's testimony to address consistency.  R. 37-39.  The ALJ cites to x-ray findings, exam results including grip strength test, mobility findings, and fine motor capability noted in the objective medical record.  Id.  The ALJ also addressed supportability by citing record evidence to support her opinion, the context of each evaluation, (e.g., presence of a flare up and lack of supporting documentation for some opinions) and compared each medical opinion's conclusion.  R. 37-39.  If the ALJ disagreed with a particular finding she noted evidence in the record that contradicted or supported a greater or less restrictive limitation, and often found greater restrictions than those provided in the medical opinions.  Id.; see Balthasar, No. 20-cv-06181, 2022 U.S. Dist. LEXIS at *16 (citing Cadillac, 84 F. App'x at 168) (stating ALJ must explain why certain evidence has been accepted and why other evidence has been rejected); see also Astrue, 649 F.3d at 196 (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.").

The ALJ provided additional reasoning and evaluation of the record to support her findings, aside from individually addressing each medical opinion:

Allegations that the claimant is unable to use his hands are not supported by the objective evidence or activities of daily living. The imaging studies have generally shown benign and stable findings, consistent with the physical exam findings. In November 2019, the left hand xray showed mild and stable findings when compared to an x-ray from 2018. The imaging reports do not support the degree of worsening alleged. Further, the bilateral foot x-rays were generally normal and did not show signs of inflammatory process. There is no evidence of significant joint deformity on x-ray or physical exam.

The disabling allegations are inconsistent with the mild finding during physical exams. The physical exams have shown normal and unassisted gait. The extremities have normal and full strength, with decreased grip strength observed in two exams. Sensory exams have been normal, with exception of one exam showed decreased sensation to vibration on one lower extremity. While grip strength was assessed as 80% full, hand and finger were dexterity intact. He was noted to have mild dexterity impairment and mild difficulty with his shoes. He had decreased sensation to vibration on one exam. Further, in view of the allegations, the claimant has not reported using any assistive devices for reaching or walking. Allegations regarding marked limitations due to hand injury from military service during Desert Storm are inconsistent with 10% rating in evidence for thumb for decrease range of motion. . . .

Moreover, it appears that despite his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. . . . [C]laimant reported that he can prepare meals, and do light housekeeping chores, such as cleaning and dishes. He reported that he goes outside every day and can drive a car and can travel unaccompanied. He can manage money and shop for groceries and house supplies. Hobbies and interests include watching TV "often" and working on cars. In March 2021, he also reported that he enjoys going to the racetrack. The claimant reported that he cleans two to three times a week and as needed. His wife does cook and laundry. He showers and dresses himself daily. The claimant reported that he also enjoys listening to the radio. The record shows the claimant moved in with his mother for a short period to help after her husband became ill. The claimant reported that he was driving back and forth living between his mother's house and his sister's house and helping them. He traveled home to his wife and daughters on weekends. He helped his wife when she was sick in the hospital. He cares for his daughters.

> Allegations that the claimant can stand and walk no longer than 10-15 minutes each and is unable to use his hands, is inconsistent with unaccompanied and daily travel, handling items for purchase, handling a steering wheel while driving, or standing and walking at a racetrack. Overall, the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

R. 35-36 (internal citations omitted).

In crafting Plaintiff's RFC, the ALJ supports her opinion with evidence from the record that supports the RFC determination, for example grip strength, x-ray results, mobility and sensory exam results, Plaintiff's testimony, Plaintiff's daily activities, and the medical opinions submitted. Id. Significantly, the ALJ notes, and Plaintiff testified that he could dress himself with some difficulty, he could drive, and do light chores and care for his daughters. R. 474, 470, 315. Notably as to consistency, four out of five medical opinions agreed that Plaintiff occasionally could lift/carry up to twenty pounds. R. 79, 102, 450, 532. Three out of five of the medical opinions supported a finding of occasional fingering and handling. R. 103-04, 452, 533. Plaintiff testified, and it was noted among all of the medical providers, that Plaintiff's RA symptoms presented as occasional flare ups that were manageable with over-the-counter medications. R. 64, 81-83, 445, 529, 565. Multiple medical providers noted Plaintiff's hand dexterity was mildly impaired noting up to 80% grip strength and the ability to perform fine motor task like buttoning and zippering despite a flare up. R. 81-83, 449, 530. The ALJ provided a significant amount of detail when explaining her findings and included the supportability and consistency analysis required.

22

The ALJ's determinations regarding the impact of RA on Plaintiff's ability to use his hands, and the medical opinions' persuasiveness are supported by substantial evidence.[13] Accordingly, Plaintiff's first claim fails.

**B. The ALJ's error regarding the DOT determination and subsequent conclusion that Plaintiff was able to perform his past relevant work constitutes harmless error.**

Next, Plaintiff argues the VE's testimony that Plaintiff could perform his previous relevant work under the DOT definition of service advisor incorrectly led the ALJ to conclude that Plaintiff could perform his past relevant work. Doc 17 at 25. Specifically, the ALJ found Plaintiff could never be exposed to unprotected moving mechanical parts, yet his previous work as a service advisor required exposure to unprotected moving parts. Id. The Commissioner argues that if the ALJ erred when finding Plaintiff could perform past work, the ALJ provided an alternative step-five finding that there were other jobs Plaintiff could perform resulting in harmless error. Doc. 25, at 4, 14-15.

The ALJ's RFC determination called for no exposure to mechanical moving parts. R. 30. Plaintiff's past relevant work included auto mechanic (DOT 620.261-010) and service advisor (DOT 620.261-018). R. 42, 68. At the hearing, the VE testified that Plaintiff could perform the tasks required of a service advisor. R. 68. By definition a service advisor duties can include, "[i]nspects and tests automobiles and trucks to determine need for and cost of repairs: Determines need for repairs by road test . . . . May make minor adjustments or repairs, such as

---

[13] This Court will not re-weigh the evidence presented to the ALJ or substitute its own conclusions for those of the factfinder. See Rutherford, 399 F.3d at 552. The inquiry for the Court is not whether the Court would decide the same way as the ALJ, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

brake adjustment, battery cable replacement, or hinge lubrication. . . .".  DOT 620.261-018.

Although not all responsibilities would include exposure to mechanical moving parts, Plaintiff

could be exposed when making service repair assessments or "making minor adjustments."

Thus, Plaintiff would not be able to perform his previous role of service advisor under the ALJ's

RFC.

The ALJ's conclusion that the Plaintiff was able to perform his past relevant work

constitutes harmless error because the ALJ found that Plaintiff can engage in other work.  See

McNeill v. Kijakazi, No. 1:21-cv-634, 2022 WL 601028, at *6 (M.D. Pa. Feb. 28, 2022) (citing

Seaman v. Soc. Sec. Admin., 321 Fed. App'x. 134, 135 (3d Cir. 2009)) (ALJ Social Security

decisions are subject to harmless error analysis); see also Rutherford, 399 F.3d at 553 (holding

remand not required if it would not affect the outcome of the case).  The ALJ provided an

alternative step-five finding that Plaintiff could perform other jobs such as rental clerk (DOT

295.357-018) or lobby attendant (DOT 344.677-014).  R. 45, 68.  Both alternatives fall within

the limitations set by the ALJ's supported RFC.[14]  Thus, there are jobs available in the national

economy that comport with Plaintiff's limitations.  R. 45, 68; see 20 C.F.R. §§ 404.1520(g),

404.15669(c) (stating that if a claimant can perform other work, the claimant is not disabled).

The ALJ's determination that Plaintiff could perform his past relevant work as a service

advisor constitutes harmless error since Plaintiff can perform other work that comports with the

ALJ's RFC limitations.  Plaintiff's second claim fails.

**C.  The ALJ appropriately considered Plaintiff's cardiac medical records and was not required to hold the record open.**

---

[14] Both roles are classified as light work and are unskilled positions.

Third, Plaintiff argues that the ALJ should have kept the record open for post hearing cardiac evidence and failed to appropriately evaluate the cardiac evidence Plaintiff provided. Doc. 17, at 28-36.  Plaintiff also alleges that the ALJ erred when evaluating the impact of Plaintiff's cardiac condition on his ability to work.  Id.

Plaintiff underwent coronary artery bypass surgery on December 20, 2021, sixteen days before his hearing with the ALJ.  R. 26, 571.  Plaintiff's counsel requested an extension of time to submit records addressing his cardiac condition in advance of the hearing, which was granted. R. 23.  Counsel submitted an operative report for the coronary bypass before the hearing took place.  R. 23.  At the hearing, when speaking about the cardiac record Plaintiff's counsel stated, "I don't know how much the Court wanted as an addition to that . . . .  We provided what we thought would help the Court in making the decision, but if there's additional records that the Court wanted, we can certainly provide those as well." R. 54.  The ALJ also questioned Plaintiff about his post-cardiac surgery condition.  R. 64.  Plaintiff testified that he was still attending follow up appointments, as instructed he was not taking his RA medication due to his cardiac procedure, and he was experiencing new symptoms, including involuntary muscle spasms and worsening swelling in the hands and feet.  R. 31, 53-58.

After considering Plaintiff's submission and testimony, the ALJ found the following:

> The request to keep the record open for additional evidence based on recent heart surgery is denied because the undersigned finds the heart problem is a new and discreet impairment and does not meet the durational requirement that the impairment must prevent the claimant from engaging in any substantial gainful activity (SGA) for 12 months and must have lasted or be expected to last for a continuous period of not less than 12 months. Further, the other impairments are not disabling. Here, the operative report from December 2021 shows the claimant had "stable" angina and then after discussion with a cardiologist, he "elected" coronary artery

bypass graft surgery (CABG). The operative report also notes a full cardiac work up was performed before surgery and showed normal ejection fraction and relatively low risk stratification. These factors indicate likelihood of uncomplicated recovery. The record does not show evidence of a cardiac problem before December 2021. The claimant would be expected to have full recovery and the stable angina resolved. As of the date of this decision, the durational requirement is not met, nor does the evidence project that this impairment will meet the 12 month durational requirement. This impairment is nonsevere and addressed below.

***

On December 20, 2021, the claimant underwent coronary artery bypass surgery (CABG). His diagnosis was coronary artery disease with stable angina pectoris. The procedure was "elective." He had a "full cardiovascular workup" and discussion with the cardiologist before he made the decision to proceed with the surgery. His preoperative workup showed "preserved LVEF." There is no evidence of the need for emergent treatment, evidence of severe and ongoing heart failure, evidence of severe ongoing dysrhythmias, or evidence of myocardial infarction. Prior to the December record, there is no evidence that the claimant had an EKG. At hearing on January 5, 2022, the claimant testified that he is not aware of any medication side effects, because he is on all new medications. The angina is a symptom of coronary artery disease that has caused blockage of blood flow to the heart muscle. The angina was "stable" before surgery, and the surgery was expected to restore blood flow and resolve angina. This impairment did not cause significant functional limitations on the claimant's ability to perform basic work-related activities for a continuous period of 12 months, nor is it expected to meet the durational requirement.

***

The claimant testified about a recent cardiac procedure but has not otherwise required treatment in a hospital emergency department, urgent care setting, or inpatient hospital setting during the relevant period.

R. 23-34 (internal citations omitted).

Plaintiff's first argument is that the ALJ had a duty to hold the record open so Plaintiff could submit additional medical documentation regarding his cardiac procedure. Doc. 17, at 28-

36.   Statutorily, the ALJ is responsible for developing a record of the claimant's medical history for the last 12 month proceeding the filing unless there is a reason to believe that development of an earlier period is unnecessary, or the disability began less than 12 months before the application.  20 C.F.R. § 404.1512(b); see Penn v. Comm'r of Soc. Sec., No. 1:10-cv-1885, 2012 WL 646057, at *9 (N.D. Ohio Feb. 28, 2012) (citing Dotson v. Dotson Coal Co., 893 F.2d 1334 (6th Cir. 1990)) ("As long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record."). However, it is the claimant's burden to provide evidence of the disability.  See 20 C.F.R. § 404.1512(a).  A claimant must inform the ALJ or submit any written evidence required under 20 C.F.R. § 404.1512 no later than 5 business days before the date of the scheduled hearing.  20 C.F.R. § 404.935(a).  If a claimant misses the deadline, he/she may submit the additional documentation if (1) the ALJ has not issued a decision, and (2) the claimant did not inform the ALJ of the evidence, or (3) the claimant failed to submit the information in time, because of a circumstance listed in subsection (b).  20 C.F.R. § 404.935(b).

Here, the ALJ accepted evidence of Plaintiff's cardiac procedure into the record and accepted counsel's representations regarding the record.  R. 54-55.  It appears that Plaintiff informed the ALJ of possible medical records from Plaintiff's heart procedure more than five business days before the hearing, on December 27, 2024.  R. 23; Doc. 17, at 34.  In fact, Plaintiff submitted his operative report in advance of the hearing which the ALJ considered.  R. 23, 26, 54-55.  At the hearing, Plaintiff's counsel did not indicate a need to submit additional documents regarding the cardiac surgery nor did she indicate what the records would show or why they were important to the ALJ's decision.  See Stacey S. v. Com. of Soc. Sec., No. 1:21-cv-20433, 2022

WL 16834673, at *5 (D. N.J. Nov. 8, 2022) (citing Hickey v. Saul, No. 19-1571, 2020 WL 5816965, at *1, n.1 (W.D. Pa. Sept. 30, 2020)) (noting ALJ was within her discretion not keeping record open when plaintiff did not explain what additional records would show and why they were needed for ALJ to make decision).  Plaintiff's counsel represented to the ALJ that she had submitted the documents she believed were helpful.  See Amalia C. v. Kijakazi, No. 1:21-cv-01212, 2023 WL 2711609, at *6 (N.D. Ill. Mar. 20, 2023) (quoting Harris v. Saul, 835 Fed. App'x. 881, 885 (7th Cir. 2020)) (alteration in original quotation and quotation marks) ("it is 'reasonable for an ALJ to proceed on a record that [claimant's] counsel [is] satisfied with.'").  The ALJ did not err when she closed the record after considering counsel's representation, the alleged disability, and the new evidence submitted.

Additionally, it is clear that Plaintiff's heart condition was discovered for the first time after presenting at the emergency room with shortness of breath sixteen days before the ALJ hearing.  R. 49.  Medical records submitted for the time period before discovery of the 2021 heart condition reflects normal heart rhythm, normal heart rate, no murmurs, rubs, or gallops, and no respiratory distress.  R. 402.  Plaintiff did not provide any evidence indicating that his heart condition was present for 12 months preceding his disability filing or evidence of any limitations caused by his heart condition prior to his filing.[15]  Thus, the ALJ did not fail to develop the record under 20 C.F.R. § 404.1512(b) because (1) there was no previous indication of a heart condition in the medical records submitted and (2) the medical record and Plaintiff's testimony concede that the condition developed less than 12 months before the filings.  Id.; see

---

[15] Plaintiff did not allege, in his disability application, any disability due his heart condition or any limitations cause by his heart condition.

28

<u>Carla S. v. Saul</u>, No. 19-cv-1283F (consent), 2021 WL 1131268, at *4 (W.D. N.Y. Mar. 24, 2021) (citing <u>Elizabeth S. v. Comm'r of Soc. Sec.</u>, No. 19-cv-06440, 2021 WL 1054371, at *4 (W.D. N.Y. Mar. 19, 2021) (alteration in quotation marks and citations omitted)) ("To discharge the duty to develop the record, the ALJ is required 'to develop a complete medical history for at least the 12 months preceding the month in which plaintiff files her application.'"); <u>see also</u> <u>Kendall v. Comm'r of Soc. Sec.</u>, No. 2:10–263–DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011) (providing ALJ has duty to investigate missing evidence when there are obvious gaps in record). Accordingly, the ALJ did not err when developing the record.

Finally, Plaintiff argues that the ALJ's findings regarding Plaintiff's cardiac condition were not supported by substantial evidence. Doc. 17, 28-37. The ALJ found that Plaintiff's cardiac condition was a new and discrete problem that would not meet the 12 month durational requirement.[16] R. 23. The ALJ also found that the cardiac condition did not cause significant impairment on Plaintiff's functional/ability to perform work. R. 26. The ALJ supported her decision with the operative report showing "normal ejection fraction and relatively low risk stratification" and that Plaintiff's angina was "stable." R. 23. The ALJ also noted that there was no evidence of the need for emergent treatment, no evidence of severe and ongoing heart failure, no evidence of severe ongoing dysrhythmias, and no evidence of myocardial infarction. R. 26. Additionally, Plaintiff testified that he was not aware of any potential medication side effects because he is on all new medications. <u>Id.</u> The operative report noted the surgery was expected to restore blood flow and resolve the angina. <u>Id.</u> The ALJ also reviewed the full record

---

[16] <u>See</u> 42 U.S.C. § 423(d)(1)(A) (requiring a disability last or can be expected to last for at least 12 months).

submitted noting that the records did not reflect any heart conditions, medical records reflect denial of high blood pressure, heart attack, or other heart diseases, nor any complaints of heart related issues.  R. 54, 72-83, 101-07, 446, 528-37, 561-64.  Additionally, Plaintiff has not demonstrated any limitations caused by his heart condition prior to December 2021.  Id. Importantly, the operative report does not state that Plaintiff's heart condition will continue for a duration of more than 12 months and noted that left and right ventricular were functioning well. R. 571-72.

Even if the ALJ were required to hold the record open for additional submissions, the additional evidence submitted would not have changed the outcome of the case.  Thus, any error was harmless.[17]  Included in the record sent to this Court are additional filings regarding Plaintiff's heart condition submitted to the Social Security Administration after the hearing.  R. 8-13.  These filings include a letter from VA doctor, Hope Selarnick noting a diagnosis of coronary artery disease dated May 22, 2022.  R. 8-9.  A letter from CRNP David J. Clugston indicates that Plaintiff's surgery was not elective, and that Plaintiff was experiencing chronic dyspnea and right thigh pain/lower leg numbness, however, the origin of his pain was yet to be determined and the duration was not noted.  R. 10.  Dr. Sun's letter stated that after surgery Plaintiff experienced high disease activity, leg pain, and that he can no longer carry objects under ten pounds for more than five minutes.  R. 11-13.  Dr. Sun failed to provide an opinion on symptom duration, and he stated that Plaintiff had not restarted his RA medication.  Id.  None of the additional material provided to the Court indicates that Plaintiff's heart condition is ongoing or expected to continue for more than 12 months.  R. 8-13.  Additionally, the limitations noted in

---

[17] See Rutherford, 399 F.3d at 553.

the three letters detailed leg pain and increased hand swelling which were factored into the ALJ's light work RFC.  R. 30-42.  Lastly, Dr. Sun's note makes it clear that Plaintiff is not taking his RA medication which interferes with a proper evaluation of Plaintiff's capabilities.  R. 11-13; see Snedeker v. Comm'r of Soc. Sec., 244 Fed. App'x. 470, 474 (3d Cir. Jul. 6, 2007) (claimant disabling symptoms can be undermined by not taking prescribed medication and infrequently seeking medical treatment); but see Foley v. Barnhart, No. 3:04-cv-0670, 432 F. Supp. 2d 465, 481 (M.D. Pa. Jun. 16, 2005) (claimant credibility is not undermined if there is good reason not to take prescribed medication).  Therefore, the ALJ's RFC determination remains supported by substantial evidence and remand is not required.  Plaintiff's final claim is without merit.

## VI.    CONCLUSION

The ALJ did not err when she considered and evaluated the medical opinions related to Plaintiff's RA and hand use.  Substantial evidence supports the RFC.  Additionally, the ALJ fulfilled her obligation to develop the record, was not required to hold the record open, and appropriately evaluated the duration and severity of Plaintiff's heart condition when considering disability.

For these reasons, Plaintiff's request for review (Doc. 1) is **DENIED**.  An appropriate order accompanies this opinion.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge